UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA MOSBY and CECIL
MOSBY, her husband,

                                  CASE NO. 06-13157
          Plaintiffs,            HON. LAWRENCE P. ZATKOFF

v.

GREYHOUND LINES, INC.

          Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on December 27, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court upon Defendant's Motion for Summary Judgment (Dkt #15). Plaintiffs Tina and Cecil Mosby[1] have responded and Defendant has since replied. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the following reasons, Defendant's motion is GRANTED.

## II. BACKGROUND

Plaintiff filed her complaint in Wayne County Circuit Court on June 8, 2006, alleging

---

[1] Cecil Mosby is Tina Mosby's husband and his claim is derivative of Mrs. Mosby's underlying claim. For convenience, the Court will refer to Tina Mosby alone as the Plaintiff.

personal injury claims against Defendant resulting from an accident she suffered at Defendant's station in Nashville, Tennessee on September 10, 2005. Plaintiff is a resident of Detroit, and was 65 years old at the time of the incident. Defendant is a Delaware corporation with its principal place of business in Texas.

Plaintiff and her husband were traveling from Memphis to Detroit on one of Defendant's buses after visiting Plaintiff's mother near Memphis. At approximately 10:00 p.m., the bus stopped at Defendant's station in Nashville, where Plaintiff was scheduled to change busses. Plaintiff exited the bus she had been on to use the restrooms at the station and collect her baggage before catching the different bus to Detroit. After using the restroom, Plaintiff waited in line to present her tickets to Defendant's driver and board the new bus.

While waiting in line, Plaintiff observed a small step-stool that Defendant's driver had placed below the first step of the new bus. Defendant commonly used such a stool to decrease the distance between the ground and the first step, and Plaintiff had encountered stools numerous times when traveling by bus. The stool was approximately one and a half feet wide, with four legs and a rubber surface; it was not attached to the bus. Defendant's diver placed the stool so that her passengers could exit the bus when it arrived from Alabama earlier. Prior to boarding, Plaintiff saw several passengers use the stool without incident.

When it became Plaintiff's turn to board the bus, she stood on top of the stool and took hold of the safety rail located immediately inside the bus with her left hand. She then placed her left foot on the bus's first step and simultaneously grabbed the safety rail located on the bus's door, which folded outward, to her right. With one foot on the first step of the bus and both hands on safety rails, Plaintiff began to lift her right foot when she felt the stool move. This movement caused her to lose

her balance and she fell backward, hitting the left side of her head on the pavement. Although she blacked out for several seconds, Plaintiff did not require immediate medical attention and successfully boarded the bus using the stool without further assistance.

As a result of her fall, Plaintiff suffered a concussion and a pinched nerve. She filed the present suit seeking damages for Defendant's alleged negligence in placing the stool and for failing to assist her while boarding the bus. Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56(c).

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). When deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249 (citations omitted). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

## IV. ANALYSIS

### A. Applicable Law

Although this appears to be a straightforward negligence case, the parties have raised a choice of law issue. Thus, before the Court can address the merits of Defendant's motion, it must determine what law applies to the case. The choice of law issue in this case arises from the parties' different characterizations of Plaintiff's claim. Defendant contends that Plaintiff's claim is grounded on a premises liability theory and that Michigan law applies. In contrast, Plaintiff characterizes her claim as a simple negligence claim and argues that Tennessee law applies. A careful reading of Plaintiff's complaint reveals that her claim is an ordinary negligence claim based on the relationship between herself and Defendant as a passenger and a common carrier. Plaintiff's claim arises not from a defect on Defendant's premises such as a slippery substance on a floor, a crack in pavement, or other similar condition, but from Defendant's placement and use of a step-stool to assist passengers in boarding a bus. Even though Defendant's duties as a common carrier may overlap with its duties as a possessor of land, the Court finds that under the facts of this case, it is Defendant's status as a common carrier that has given rise to Plaintiff's rights and Defendant's obligations. The Court must determine whether to apply Michigan common carrier law or Tennessee law.

As a federal court sitting in diversity, the Court must apply the choice of law rules of the forum state. *Banek, Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 361 (6th Cir. 1993). Under Michigan's rules, Michigan law is presumed to apply unless there is a rational reason for applying the law of another state. *Sutherland v. Kennington Truck Service, LTD*, 454 Mich. 274, 286 (1997). However, there must be a conflict between the laws of two states before the Court proceeds with a choice of law analysis. Accordingly, the Court must first examine the laws of Michigan and

4

Tennessee to determine if they conflict. If there is no conflict, Michigan law applies. *See id.*

In this case, there is no dispute that Defendant is a common carrier under both Michigan and Tennessee law. The real issue is the standard of care Defendant owed to Plaintiff as a common carrier: Plaintiff argues that Tennessee holds common carriers to a higher standard than Michigan. The Michigan Supreme Court thoroughly discussed a common carrier's duty to its passengers in *Frederick v. City of Detroit*, 370 Mich. 425 (1963). The plaintiff in *Frederick* was injured when she fell while alighting from the defendant's bus. She claimed that the defendant was negligent in allowing its rubber flooring to wear and failing to provide a railing for passengers exiting the bus. During the jury instructions, the trial court explained that common carriers, like any defendant in a negligence action, owe a duty of ordinary care to their passengers; but the court elaborated that it is more difficult for a common carrier to meet the standard of reasonableness because of the risks involved with carriage for hire. The jury found in the defendant's favor and the plaintiff appealed, arguing that the trial court erred by not instructing the jury that common carriers owe a heightened duty of care to their passengers.

The Michigan Supreme Court explained that when courts referred to a heightened duty of care, they meant "care proportionate to the nature and risk of the undertaking in view of the nature of the means of conveyance employed." *Id.* at 430 (quoting *DeJager v. Andringa*, 241 Mich. 474, 476 (1928)) (internal quotation marks omitted). As such, the reference to a high degree of care, "should not be ... taken as a pronouncement of a different, more exacting, standard of care required of carriers ...." *Id.* at 432. Rather, "[t]he common law standard of reasonable care is constant although it may require an infinite variety of precautions, or acts of care, depending upon the circumstances ...." *Id.* (quoting 2 Harper and James, *The Law of Torts* § 16.13) (internal quotation

marks omitted). To illustrate this principle, the court referred to an earlier case involving a railroad's duty of care to its passengers:

> All railroad companies are held to the duty of being prudent railroad companies, and bound to conduct their business with such precautions as prudence has usually found necessary. As compared with the care needed in business involving no possible human risk, the care to be used may be properly enough called extraordinary, but as compared with each other all such companies have the same duty.

*Id.* at 433 (quoting *Michigan Central R.R. Co. v. Coleman*, 28 Mich. 440 (1874)). The court concluded that

> when a duty arises as a matter of law between a carrier and its passengers, it is the common law duty of due care and it may be defined simply as the duty to exercise such diligence as would be exercised in the circumstances by a reasonably prudent carrier. It then becomes the function of the jury to determine from the evidence what action, if any, should have been taken or omitted in order to measure up to the standard of a reasonably prudent carrier in the same circumstances. ... It is for the jury to decide as a matter of fact, and not for the court to decide as a matter of law, whether a reasonably prudent carrier in similar circumstances would exercise greater or lesser diligence in performance of its duty of due care owed to passengers than would a reasonably prudent person engaged in other pursuits not involving the risks inherent in a common carrier's business.

*Id.* at 437-38. The practical effect of the court's holding is that in Michigan "there are no 'degrees' of care or negligence, as a matter of law; there are only different amounts of care as a matter of fact." W. Page Keeton, et al., *Prosser and Keeton on Torts* § 34 at 211 (5th ed. 1984) (Prosser & Keeton).

In practice, there is no conflict between Tennessee's standard of care for common carriers and Michigan's standard. Although the Tennessee courts have consistently stated that a common carrier owes a high degree of care, an examination of their cases reveals that the standard of care is still reasonableness. The court applied this standard in *Nashville, Chattanooga & St. Louis Ry. Co. v. Newsome*, 206 S.W. 33 (Tenn. 1918). The court explained:

> Whether or not a carrier is under obligation to render personal assistance to a passenger in boarding or leaving its vehicles depends on the circumstances of each

6

case. If the place is dangerous, or if the passenger is aged or infirm, or if the circumstances are such as to indicate that the passenger requires help, it may become the duty of the carrier to render such assistance. If, on the contrary, passengers are invited to board or alight at a safe and proper place, and there is nothing to indicate that they require assistance, it is not the duty of the carrier to render them aid in boarding or alighting.

*Id.* at 33. Accordingly, the court concluded that the defendant did not have a duty to assist the plaintiff while exiting the train where the place the train stopped was not dangerous and there was no evidence that the plaintiff was at risk of being injured. Significantly, the court's standard was reasonableness under the circumstances, not a more stringent standard: compared to a reasonable common carrier, the defendant was not negligent.

Similarly, in *Nashville R.R. v. Howard*, 78 S.W. 1098, 1103 (Tenn. 1904), the Tennessee Supreme Court found the following jury instruction accurately described a common carrier's duties:

When it is said that a carrier of passengers must provide for their safety, as far as human skill and foresight will go, it is not meant that he shall exercise all that care and diligence of which the human mind can conceive, or all the skill and ingenuity of which he is capable. The law only requires of it all those things necessary for the safety of the passenger *that are reasonable and consistent with the business of the carrier*, and proper to the means of conveyance employed by him to be provided, and that the highest degree of practical care and diligence and skill shall be adopted that is *consistent with the mode of conveyance used, and that will not render its use impractical and inefficient* for it intended purposes.

*Id.* at 1103 (emphasis added). It is apparent from this instruction that the high degree of care required of common carriers is the same degree of care a reasonable common carrier would use. This point is illustrated in *Felton v. Horner*, 37 S.W. 696 (Tenn. 1896), where the court quoted the United States Supreme Court approvingly:

The terms in question do not mean all the care and diligence the human mind can conceive of, nor such as will render the transportation free from any possible peril, nor such as would drive the carrier from his business. It does not, for instance, require ... steel rails, and iron or granite cross-ties, because such ties are less liable to decay, and hence safer, than those of wood; nor upon freight trains air brakes,

7

> bells, pulls, and a brakeman upon every car. But it does require everything necessary to the security of the passenger ... and reasonably *consistent with the business of the carrier and the manner of conveyance employed.*

*Id.* at 697 (quoting *Indianapolis & St. Louis R.R. Co. v. Horst*, 93 U.S. 291, 296-97 (1876)) (emphasis added). As the Supreme Court indicated, common carriers are not required to use the safest possible materials or protect passengers from all possible harm. On the contrary, they must only use the degree of skill a reasonable common carrier would use under similar circumstances.

The facts in *Knoxville Cab Co. v. Miller*, 138 S.W.2d 428 (Tenn. 1940) further demonstrate that what is reasonable for a common carrier under Tennessee law is a function of the nature and degree of the risks present and the burden on the defendant in guarding against such risks, in light of the customary practices of the defendant's business and mode of conveyance. In *Miller*, the plaintiff was struck by a rock while riding in the defendant's taxi. The plaintiff claimed that the defendant, knowing that some of its drivers who were on strike at the time had exhibited violence towards the defendant's vehicles, should have provided a safety screen in the taxi's windows. The court disagreed, concluding that "[t]he practical difficulties would be considerable, and in cases of collision or other accident the dangers of having the windows effectually barred might be far worse than the danger of injury from an occasional missile." *Id.* (quoting *Missimer v. Philadelphia & R.R. Co.*, 17 Phila. 172 (1912)). Since meeting the plaintiff's proposed standard would be burdensome, and was inconsistent with the defendant's business and manner of conveyance, the defendant did not have a duty to take such precautions even if the risks were foreseeable. The amount of care required, thus, not only depended on the defendant's status as a common carrier, but on the particular facts of the case: the court judged the defendant's conduct based on what was reasonable under the circumstances.

The court's reasoning in *Shirley v. Louisville & Nashville R.R. Co.*, 251 S.W.2d 72 (Tenn. Ct. App. 1952), is consistent with the principle that the amount of care required varies with the circumstances of each case and is judged against a standard of reasonableness, where the plaintiff slipped on a banana peel on the steps of a bus. While the court's decision to dismiss the case was based in part on its conclusion that the defendant could not be considered negligent absent evidence that it had notice of the banana peel's existence, the court framed its decision in terms of the amount of care required:

> To have successfully guarded against an accident of this kind, the company would be compelled to keep a servant at the steps of every car during all the time they were receiving and discharging passengers. *No such degree of vigilance is required of a carrier to guard against a peril of this character*.

*Id.* at 441 (quoting *Louisville & Nashville R.R. Co. v. O'Brien*, 174 S.W. 31, 33 (Ky. App. 1915)) (emphasis added). In finding that the defendant was not negligent, the *Shirley* court ultimately concluded that the defendant did not have a duty to protect against the risk in the case. In other words, the defendant was not negligent when compared to a reasonable common carrier.

Finally, the Court of Appeals of Tennessee discussed the duty of care in *White v. Metro. Gov't of Nashville & Davidson County*, 860 S.W.2d 49 (Tenn. Ct. App. 1993). The court noted that "reasonable care is a flexible concept" such that "some occasions and circumstances may require a higher degree of care than others." *Id.* at 51. Thus it found that "common carriers owe a heightened duty of care to their passengers." *Id.* at 52. Still, the court recognized that "common carriers are not insurers of their passengers' safety," *id.*, and limited their duty, explaining that "consistent with the practical conduct of their business, they must exercise the utmost diligence, skill, and foresight, to provide for their passengers' safety," *id.* Consequently, the court reasoned that "passengers must observe the surrounding conditions and must protect themselves from the risks and hazards that

9

ordinarily accompany the conveyance they are using." *Id.* Since "[s]tarting and stopping are movements commonly associated with buses," the courts "have consistently recognized that bus drivers, may as a general rule, anticipate that passengers will be aware of that fact and may start their bus in a normal motion before all the passengers are seated." *Id.*

The *White* court found that the scope of a common carrier's duty is defined by "the statutes, regulations, principles, and other precedents that make up the law," as well as "custom[s] representing the common judgment concerning the risks of a particular situation and the precautions required to meet them." *Id.* at 52. Thus, the court reasoned that the rule that bus drivers may start the bus in motion before all passengers are seated does not apply if the driver starts or stops in an unusual or abnormal manner. *Id.* Also, "[c]ommon carriers will be held to a higher standard of care with regard to aged or infirm passengers whose age or infirmity is apparent from their appearance." *Id.* The latter statement is strikingly similar to the Michigan Supreme Court's conclusion that "[t]he common law standard of reasonable care is constant although it may require an infinite variety of precautions, or acts of care, depending upon the circumstances." *Frederick*, 370 Mich. at 432. By equating a higher standard of care with additional precautions dictated by the circumstances, the Tennessee court simply restated the standard of care for ordinary negligence: reasonable care appropriate to the circumstances. It then becomes the jury's function to determine what is reasonable given the nature of the risks involved and the standards and customs of the defendant's business.

The Tennessee cases demonstrate that their application of the "heightened" standard is nothing more than an acknowledgment of the increased risks associated with carriage for hire and the passengers' reliance on the common carriers for their safety. As *Shirley*, *Newsome*, and *Howard* demonstrate, the Tennessee courts have held common carriers to a standard of reasonable care,

which, based on the nature of a carrier's business, requires greater diligence to meet. This does not change the fact that a carrier must act reasonably. As *Felton* and *Miller* show, carriers are not required to do more than any other reasonable carrier would do in like circumstances. Moreover, as the court in *White* recognized, a carrier's duty does not include protecting passengers from those hazards which the passengers should, with ordinary care, become aware of and avoid. Stated another way, a common carrier owes its passengers the same amount of care that a reasonably prudent common carrier would provide under similar circumstances, consistent with its business and manner of conveyance. *See Felton*, 37 S.W. at 697 (quoting *Chicago Burlington & Quincy R.R. Co. v. Hazard*, 26 Ill. 373 (1861)) (stating "undoubtedly a passenger taking a freight train takes it with the increased risks and diminution of comfort *incident thereto*; and *if it is managed with the care requisite for such trains*, it is all those who embark on it have a right to demand."). The amount of care required to meet that standard depends on the particular risks involved in each case. *See* Prosser & Keeton, *supra*, §34 at 208 ("The amount of care demanded by the standard of reasonable conduct must be in proportion to the apparent risk. As the danger becomes greater, the actor is required to exercise caution commensurate with it."). As the Michigan Supreme Court recognized, when compared "with the care needed in business involving no possible human risk, the care to be used may be properly enough called extraordinary," but when compared to a common carrier in like circumstances, it is merely reasonable. *Michigan Central R.R. Co. v. Coleman*, 28 Mich. 440 (1874). Therefore, the Court concludes that there is no conflict between Michigan and Tennessee law, and will apply Michigan law in this case.

**B. Defendant's Motion for Summary Judgment**

To succeed on a claim of negligence the plaintiff must demonstrate (1) a duty owed to the

11

plaintiff by the defendant; (2) a breach of that duty; (3) factual and legal causation; and (4) harm. *Case v. Consumers Power Co.*, 463 Mich. 1, 6 (2000). The existence of a duty in this case is premised on Defendant's status as a common carrier and Plaintiff's status as a passenger. Common carriers have a duty to their passengers to "exercise such diligence as would be exercised in the circumstances by a reasonably prudent carrier." *Frederick*, 370 Mich. at 437. Nevertheless, a common carrier is not an insurer of the passengers' safety, *Oppenheim v. Pitcairn*, 293 Mich. 475, 477 (1940), and does not have a duty to protect passengers from risks ordinarily present in the mode of conveyance employed, *Frohriep v. Lake Shore & M.S. Ry. Co.*, 131 Mich. 459, 465 (1902).

Plaintiff claims that Defendant was negligent because its driver either placed the step-stool in a way that caused it to be unstable or because the stool itself was not fit for use. On the other hand, Defendant argues that step-stools like the one in question are commonly used in bus travel, and that Plaintiff should have appreciated the risk of using it to board the bus. Thus, Defendant asserts that in the absence of unusual circumstances it did not have a duty to protect Plaintiff from losing her balance and falling. The Court agrees with Defendant.

Defendant does not have a duty to protect Plaintiff from hazards that are ordinarily present in the mode of conveyance employed. This is similar to a landowner's duty with respect to open and obvious dangers. *See Kenny v. Katz Funeral Home, Inc.*, 472 Mich. 929 (2005) (stating that a danger is open and obvious when it is reasonable to expect an average person of ordinary intelligence to discover the danger upon a casual inspection). In both instances the defendant is not obligated to protect the plaintiff from what she should be aware of and able to protect herself against. It is clear that stairs and steps are considered open and obvious hazards that plaintiffs are expected to appreciate and protect themselves against. *See Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 616

(1995) (concluding that "because steps are the type of everyday occurrence that people encounter, under most circumstances, a reasonably prudent person will look where he is going, will observe the steps, and will take appropriate care for his own safety."). The record shows that steps and stools are an ordinary part of bus travel, and the Court finds no principled reason to conclude that stairs should be considered any less open and obvious in the context of common carriers than in the case of possessors of land. *See id.* at 16-17 ("Under ordinary circumstances, the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty ... to make ordinary steps 'foolproof.'"); *Frohriep*, 131 Mich. at 464-65 (concluding that passengers assume the risks of hazards ordinarily present in the mode of conveyance). As such, absent a showing that the stool remained unreasonably hazardous despite being an ordinary part of bus travel, Defendant did not have a duty to protect Plaintiff.

The Court finds that there is no evidence to show that Plaintiff could not appreciate the risk of losing her balance, or that the stool was unreasonably dangerous. Plaintiff has not presented any evidence to show that the pavement the driver placed the stool on was uneven or unusual in any way that would cause the stool to become unstable. Additionally, there is no evidence that the stool was defective or unfit for use: Plaintiff admitted that the stool did not break, bend, or appear defective. Furthermore, the same stool had been used to assist a busload of passengers exit and numerous passengers board the bus without incident immediately prior to Plaintiff's fall. Even more telling is the fact that after Plaintiff's fall she and other passengers used the same stool to board the bus without incident. Moreover, Plaintiff was familiar with the use of step-stools under these circumstances and was plainly able to see that the stool was not connected to the bus. As a consequence, it was apparent that the stool could be moved and Plaintiff could have easily guarded

13

against the risk of the stool shifting. Without any evidence that the stool presented an unreasonable risk of harm, Defendant was not obligated to provide a different stool or take further precautions to protect Plaintiff from falling.

Additionally, the Court finds that Defendant was not obligated to provide assistance to Plaintiff in boarding the bus. There is no evidence that Defendant knew or should have known that Plaintiff required assistance. Although Plaintiff was 65 years old at the time, she did not ask for or request assistance to board or alight from the bus. Further, Plaintiff had encountered the type of stool involved in this case on prior occasions and was familiar with bus travel. Finally, there is no evidence in the record that Plaintiff was noticeably in need of assistance. Thus, Defendant had no duty to help Plaintiff as she boarded the bus.

Finally, there is no evidence that any risk of falling was attributable to Defendant's negligence. Plaintiff suggests that Defendant could have used a heavier stool or placed it in a position where it could not move. However, there is no evidence in the record suggesting that the stool was improperly constructed, defective, or unfit for use; and there is no evidence that the stool was placed on uneven pavement or that there was anything on the ground that would cause the stool to move. Plaintiff's arguments to the contrary are based on nothing more than conjecture and cannot create a genuine issue of fact for trial. Likewise, Plaintiff's argument that Defendant should have provided additional railing is unpersuasive. The record shows that Plaintiff was holding on to the available railings with both of her hands, and there is no suggestion that the railings were inaccessible or that the step was placed too far from the bus. In short, Defendant was not required to make its busses foolproof. Therefore, Defendant is entitled to summary judgment.

## V. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's cause of action is HEREBY DISMISSED.

IT IS SO ORDERED.

                                              s/Lawrence P. Zatkoff  
                                              LAWRENCE P. ZATKOFF  
                                              UNITED STATES DISTRICT JUDGE

Dated: December 27, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on December 27, 2007.

                                              s/Marie E. Verlinde  
                                              Case Manager  
                                              (810) 984-3290